UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Tammy R. Yacos,

  Plaintiff,

 v.

Commissioner of Social Security,

  Defendant.

18-CV-1271
DECISION & ORDER

---

On November 12, 2018, the plaintiff, Tammy R. Yacos, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On June 10, 2019, Yacos moved for judgment on the pleadings, Docket Item 7; on September 27, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 14; and on October 18, 2019, Yacos replied, Docket Item 16.

For the reasons that follow, this Court denies Yacos's motion and grants the Commissioner's cross-motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On September 11, 2015, Yacos applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Docket Item 5 at 268-90. She

---

[1] One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status

claimed that she had been disabled since January 1, 2013, due to celiac disease, general weakness and lethargy, stomach pains, fibromyalgia, limitations in the "physical activities that she [could] do," osteoporosis, difficulty lifting objects, "rods/screws in [her] left arm," "screws/plate" in her right foot, anxiety and panic attacks, insomnia, high blood pressure, and overactive bladder. *Id.* at 303, 322.

On January 5, 2016, Yacos received notice that her application was denied because she was not disabled under the Act. *Id.* at 202. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 218, which was held on December 18, 2017, *id.* at 30-78. The ALJ then issued a decision on March 6, 2018, confirming the finding that Yacos was not disabled. *Id.* at 19-29. Yacos appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5-7.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Yacos's appeal. Yacos was examined by several different providers, but the opinions of James J. Piscatelli, M.D.; John Schwab, D.O.; and Janine Ippolito, Psy.D., are of most significance to the claim of disability here.

### A. James J. Piscatelli, M.D.

On November 21, 2013, Dr. Piscatelli, a gastroenterologist, evaluated Yacos. He noted that Yacos's earlier biopsies were consistent with celiac disease and that

---

requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

"[d]espite following a gluten-free diet, she . . . [was] still having anywhere from 3 to 10 bowel movements a day." *Id.* at 432. Dr. Piscatelli scheduled a colonoscopy, an upper endoscopy, and small-bowel biopsies to further understand Yacos's symptoms. *Id.*

On February 27, 2014, Dr. Piscatelli reviewed the results of these procedures and diagnosed celiac disease and microscopic colitis, a condition "associated with celiac disease." *Id.* at 430. He prescribed a glucocorticoid for the colitis and recommended that Yacos see a dietician to improve her compliance with a gluten-free diet. *Id.*

Dr. Piscatelli last evaluated Yacos on May 1, 2014. He noted that Yacos "ha[d] done quite well [on the glucocorticoid], having 1 or 2 bowel movements a day" and recommended that she continue her current medication and gluten-free diet. *Id.* at 434.

### B. John Schwab, D.O.

On December 18, 2015, Dr. Schwab, a family medicine specialist, completed a consultative internal medicine evaluation of Yacos. *Id.* at 469-72. Yacos reported that "in 1977 she began treatment for celiac sprue disease . . . [and still had] flare ups every day and [wore] Depends." *Id.* at 469. With respect to Yacos's gastrointestinal issues, Dr. Schwab observed that Yacos's "[b]owel sounds [were] normal" and her "[a]bdomen [was] soft," though she did have "generalized tenderness." *Id.* at 471. Dr. Schwab diagnosed celiac disease, fibromyalgia, migraine headaches, hypertension, asthma, and tobacco abuse. *Id.* at 472. He opined that Yacos "should avoid any respiratory irritants that could trigger an asthma attack" but "otherwise [recommended] no restrictions based on the findings of [his] examination." *Id.* at 472.

3

### C. Janine Ippolito, Psy.D.

On December 18, 2015, Dr. Ippolito, a psychologist, completed a consultative psychological evaluation of Yacos. *See id.* at 463-67. Dr. Ippolito diagnosed major depressive disorder (recurrent, moderate) and noted Yacos's reported diagnoses of chronic pain and burning in her back, abdomen, legs, and shoulders; celiac disease; asthma; fibromyalgia; migraines; high blood pressure; borderline diabetes; and a heart murmur. *Id.* at 466. She opined that Yacos had no limitations in her ability to "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others." *Id.* at 465-66. But Yacos did have "moderate to marked limitations" in appropriately dealing with stress because of her "current emotional distress and fatigue." *Id.* at 466. Dr. Ippolito recommended that Yacos begin mental health counseling. *Id.*

## III. THE ALJ'S DECISION

In denying Yacos's application, the ALJ evaluated Yacos's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI). At the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful employment. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. §§ 404.1520(a)(4); 416.920(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(i). If there are no severe

4

impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. §§ 404.1520(a)(4); 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the claimant has a severe impairment or combination of impairments that meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. §§ 404.1520(a)(4); 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e); 416.920(a)(4)(iv); 416.920(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* §§ 404.1545; 416.945.

After determining the claimant's RFC, the ALJ completes step four. §§ 404.1520(e); 416.920(e). If the claimant can perform past relevant work, he or she is not disabled, and the analysis ends. §§ 404.1520(f); 416.920(f). But if the claimant cannot, the ALJ proceeds to step five. §§ 404.1520(a)(4)(iv); 404.1520(f); 416.920(a)(4)(iv); 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

5

20 C.F.R. §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ began by declining to admit certain additional written evidence that Yacos sought to introduce—records from Arvind Wadhwa, M.D., an internist—because that evidence was submitted "less than five business days before the scheduled hearing date," December 18, 2017. Docket Item 5 at 19. Yacos's counsel explained at the hearing that on December 6, 2017, he had first learned that his office had "the wrong information for [Dr. Wadhwa]" and therefore had previously "contacted the wrong clinic" for Yacos's records. *Id.* at 37. The ALJ denied counsel's request to hold the record open so that he could obtain records from Dr. Wadhwa, explaining that "[w]hile [Yacos's] November 17, 2017 letter advising [the ALJ] of additional outstanding records was timely submitted, [Dr. Wadhwa] was not included on that list [of providers]" and Yacos's reason for this omission "[did] not meet [any] of the circumstances referenced in [20 C.F.R. §§ 404.935(b) and 416.1435(b)]." *Id.* at 19.

The ALJ then proceeded to the five-step evaluation process. She found at step one that Yacos had not engaged in substantial gainful activity since the alleged onset date. Docket Item 5 at 22. At step two, the ALJ found that Yacos had "the following severe impairments: celiac sprue disease and asthma." *Id.* The ALJ found that Yacos's fibromyalgia and insomnia were not "medically determinable impairment[s]"; that her distal radius and patella fractures and migraines were not sufficiently "durationally

6

severe"; and that her osteoporosis, depression, and anxiety were non-severe impairments. *Id.* at 22-23.

At step three, the ALJ determined that Yacos did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 24. According to the ALJ, although "[Yacos]'s medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,] . . . [Yacos's] statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ specifically found that Yacos's celiac disease did not meet Listing 5.06 (inflammatory bowel disease) because it neither "cause[d] the [type of] obstruction described at Listing 5.06A"[2] nor was supported by the laboratory findings necessary to establish Listing 5.06B[3]. *Id.* Yacos also did not qualify under Listing 5.08 (weight loss due to a digestive disorder) because "[her] body mass index [had] never been below [the minimum level of] 17.5." *Id.* Finally, Yacos's asthma did not meet the requirements of Listing 3.03 (asthma) because "[t]here [was] no pulmonary function testing in the record to support

---

[2] *See* 20 C.F.R. Part 404, subpart P, App'x 1, § 5.06A (providing that inflammatory bowel disease may be demonstrated through evidence of "[o]bstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period").

[3] *See* 20 C.F.R. Part 404, subpart P, App'x 1, § 5.06B (providing that inflammatory bowel disease may be demonstrated through evidence of at least two of the following conditions occurring within the same consecutive six-month period: anemia, low serum albumin, "tender abdominal mass palpable on physical examination," perineal disease, involuntary weight loss, or a need for "supplemental daily enteral nutrition").

7

the criteria of Listing 3.03A," and Yacos's asthma "[had] not resulted in the required number of hospitalizations necessary to establish Listing 3.03B."[4]  *Id.*

The ALJ then found that Yacos had the following RFC:

> [Yacos can] perform medium work[5] . . . except she: can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffold[s]; can occasionally stoop, kneel, couch, and crawl; can tolerate occasional exposure to extreme heat, extreme cold, wetness, humidity, dust, odors, fumes, and pulmonary irritants; and, in addition to normal breaks and mealtimes, . . . will require three additional unscheduled breaks of 10 minutes each per 8-hour workday.

*Id.* at 24-25.  In reaching this determination, the ALJ accorded "significant weight" to the opinion of the consulting physician, Dr. Schwab, and some weight to the opinion of the consulting psychologist, Dr. Ippolito.  *Id.* at 23-26.

At step four, the ALJ found that Yacos had no past relevant work.  *Id.* at 27.  And at step five, the ALJ found that "[c]onsidering [Yacos's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Yacos] could perform."  *Id.*  Specifically, the ALJ credited the testimony of a vocational expert that Yacos could find work as a dining room attendant.  *Id.* at 28.

---

[4] *See* 20 C.F.R. Part 404, subpart P, App'x 1, § 3.03 (providing that asthma may be demonstrated through evidence of a maximum forced expiratory volume below certain levels and "[e]xacerbations or complications requiring three hospitalizations [for 48 hours or more] within a 12-month period and at least 30 days apart").

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, . . . he or she can also do sedentary and light work."  20 C.F.R. §§ 404.1567(c); 416.967(c).

8

**STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

**I.    ALLEGATIONS**

Yacos argues that the ALJ erred in three respects. Docket Item 7-1 at 11-15. First, she argues that the ALJ erred in rejecting additional evidence under the "five-day rule." *Id.* at 11-13. Second, she argues that the ALJ erred in not affirmatively

developing the record. *Id.* at 13-15. Finally, she argues that the ALJ's determination of her physical RFC is not supported by substantial evidence. She contends that these errors warrant remand for appropriate consideration of her celiac disease, asthma, and other conditions, including fibromyalgia, osteoporosis, and anxiety. *Id.* at 15-23. This Court disagrees and therefore affirms the Commissioner's decision.

## II. ANALYSIS

### A. Five-Day Rule

Yacos first argues that the ALJ erred in rejecting her request to submit post-hearing evidence relating to her celiac disease. *Id.* at 11-13. But that issue does not merit remand.

The Social Security Administration's regulations require that a claimant "inform [the ALJ] about or submit any written evidence . . . no later than 5 business days before the date of [a] scheduled hearing." 20 C.F.R. §§ 404.935(a); 416.1435(a). "If [a claimant does] not comply with this requirement, the [ALJ] may decline to consider . . . the evidence," unless one of the following exceptions applies:

> (1) [An] action [of the Administration] misled [the claimant];
>
> (2) [The claimant] had a physical, mental, educational, or linguistic limitation(s) that prevented [him or her] from informing [the Administration] about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him or her] from informing [the Administration] about or submitting the evidence earlier.

§§ 404.935(b); 416.1435(b). An ALJ's rejection of late-submitted evidence is reviewed for an abuse of discretion. *See Howe v. Colvin*, 147 F. Supp. 3d 5, 8 (D.R.I. 2015).

Here, the ALJ denied Yacos's request to keep the record open so that after the hearing she could introduce records from her primary care provider, Dr. Wadhwa, *see* Docket Item 5 at 37—evidence that Yacos argues supports her claims regarding the severity of her celiac disease, *see* Docket Item 7-1 at 11-13. This Court need not decide whether that denial was an abuse of discretion because even if it were, any error was harmless. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand when "application of the correct legal principles to the record could lead [only to the same] conclusion").

Dr. Wadhwa's treatment notes do not conflict with the ALJ's conclusion that Yacos's celiac disease did not meet Listing 5.06 (inflammatory bowel disease). Docket Item 5 as 24. Nor do they suggest that the ALJ erred in formulating Yacos's RFC. Early portions of the excluded records support Yacos's assertions about the severity of her disease. *See, e.g.*, *id.* at 88 (treatment note from July 2015 stating that Yacos was "unable to eat due to [c]eliac" and was experiencing "[i]ntermittent diarrhea"). But later notes show that Yacos's gastrointestinal issues had improved significantly. *See, e.g.*, *id.* at 110 (treatment note from March 2017 stating that Yacos "[a]dmit[ted] no [gastrointestinal] symptoms if careful with her diet" and had "[n]o acute abdominal pain, pyrosis, nausea, vomiting, change with bowels, or melena"); *see also id.* at 97, 100, 104, 113, 119, 122, 124 (treatment notes from April 2016, September 2016, November 2016, May 2017, July 2017, October 2017, November 2017 observing no acute gastrointestinal issues). So even if the ALJ abused her discretion in refusing to accept Yacos's post-hearing evidence, any such error would not warrant remand.

## B. Duty to Develop the Record

Yacos next argues that the ALJ did not fulfill her affirmative duty to develop the record with respect to Yacos's celiac disease. Docket Item 7-1 at 13-15. The Court again finds that it need not decide whether the ALJ so erred because any such error would be harmless.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, prior to rendering an eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).

Here, in rejecting Yacos's application for disability benefits, the ALJ relied in part on her finding that "[i]f [Yacos's] celiac disease were as severe and uncontrolled as she allege[d] in [her] testimony, leaving her bedridden for most of the day and unable to

12

tolerate a single meal without pain, swelling, and diarrhea," then it would not be "unreasonable to expect at least one follow-up for the disease in the nearly 2 years preceding the hearing." Docket Item 5 at 26; *see also id.* ("If [Yacos's allegations] were true, it is not unreasonable to expect such a significant, perhaps extreme, detail to be apparent in the treating source notes."). Especially because the ALJ did not have Dr. Wadhwa's treatment notes from 2016 to 2017, Yacos argues that the ALJ should have obtained more information from Yacos's providers concerning her symptoms during those two years before reaching that conclusion.

This Court has, in fact, reviewed Dr. Wadhwa's treatment notes from that two-year time period, and, as discussed above, they do not corroborate Yacos's testimony about the severity of her symptoms. On the contrary, they support the ALJ's findings. So even if—absent Dr. Wadhwa's notes—there was a gap in the record regarding Yacos's celiac disease, "application of the correct legal principles to the record could lead [only to the same] conclusion." *See Zabala*, 595 F.3d at 410. For that reason, any error in failing to develop the record was harmless, and there is no need to remand so that the ALJ can develop the record further.

### C. Substantial Evidence

Finally, Yacos argues that even if the ALJ did not err in either of the particular respects discussed above, the ALJ's determination of her physical RFC nevertheless is not supported by substantial evidence. Docket Item 7-1 at 15-22. Yacos specifically argues that the ALJ's RFC determination did not incorporate appropriate limitations resulting from her celiac disease, asthma, and other conditions—including fibromyalgia, which the ALJ found was not a "medically determinable impairment," and osteoporosis

13

and anxiety, which the ALJ found were non-severe impairments. *Id.* at 15-23. This Court disagrees.

First, substantial evidence supports the ALJ's conclusion that Yacos's celiac disease did not warrant a finding of disability. The consulting physician, Dr. Schwab, opined in 2015 that Yacos had no functional limitations resulting from her celiac disease. Docket Item 5 at 472. Likewise, Dr. Piscatelli, a treating gastroenterologist, found in 2014 that Yacos "ha[d] done quite well [on the prescribed glucocorticoid medicine], having 1 or 2 bowel movements a day"[6] and recommended that she continue with her current medication and gluten-free diet. *Id.* at 434. As discussed above, even the medical records from Dr. Wadhwa that the ALJ did not consider support those conclusions. And Yacos did not produce any medical evidence contradicting these opinions or otherwise supporting her assertions about the severity of her disease.

Second, the ALJ did not err prejudicially in determining the degree to which Yacos's asthma limited her physical functioning. The ALJ found that Yacos could perform medium work and "tolerate occasional exposure to extreme heat, extreme cold, wetness, humidity, dust, odors, fumes, and pulmonary irritants." *Id.* at 25. In reaching this determination, she gave "significant weight" to the opinion of Dr. Schwab, *see id.* at 27, including his recommendation that Yacos should "avoid any respiratory irritants that could trigger an asthma attack" but otherwise was not limited, *id.* at 472.

---

[6] Dr. Piscatelli's observation that with appropriate treatment and diet Yacos experienced only one to two bowel movements per day—an observation that is not contradicted by any medical evidence in the record—also supports the ALJ's specific accommodation for up to three additional unscheduled restroom breaks per workday. *See id.* at 27.

14

Yacos is incorrect in asserting that Dr. Schwab's opinion precluded medium work. On the contrary, Dr. Schwab was clear that Yacos had "no limitations" except that she should avoid respiratory irritants. *Id.* To the extent Yacos takes issue with the ALJ's determination that she could tolerate occasional exposure to dust, odors, fumes, and pulmonary irritants, that argument is inconsistent with the reasons why Yacos contends that her asthma prevented her from working. *See* Docket Item 7-1 at 18 (arguing that Yacos's asthma precluded her from performing medium work only because such work involved more standing, walking, and lifting and carrying of objects than she could tolerate). And, in any event, the RFC is supported by substantial evidence in that regard. *See e.g.*, Docket Item 5 at 390-420 (treatment notes from January 2012 to December 2013 observing normal lung functioning and no complaints regarding asthma). Thus, the ALJ's physical RFC determination adequately addressed the restrictions caused by Yacos's asthma.

Finally, the ALJ adequately and appropriately considered Yacos's other conditions, including her non-severe impairments, in determining her RFC. *See* 20 C.F.R. § 404.1545 ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). Generally speaking, the ALJ explicitly stated that in determining Yacos's RFC she "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." Docket Item 5 at 25; *see also id.* at 24 (ALJ's statement that her mental RFC determination incorporated the function-by-function analysis she undertook at step three in finding that Yacos's anxiety and depression did not constitute "severe" impairments). But the ALJ also

made more specific findings evidencing her consideration of impairments that were not "severe."

With respect to Yacos's fibromyalgia, the ALJ determined that this condition was "not a medically determinable impairment." *Id.* at 22. Even if this conclusion were error—that is, even if fibromyalgia was a non-severe impairment such that the ALJ was required to incorporate any limitations it caused into Yacos's RFC—any such error was harmless. Dr. Schwab, to whose opinion the ALJ accorded significant weight, diagnosed fibromyalgia but nevertheless opined that Yacos had no physical limitations except the need to avoid respiratory irritants. *Id.* at 472. And if that were not enough, an August 2015 treatment note from Dr. Wadhwa found that Yacos's symptoms were "not consistent with [f]ibromyalgia" but instead were more likely the result of her celiac disease. *Id.* at 91. So even if the ALJ was required to address the limitations caused by Yacos' fibromyalgia, any error in failing to do so would have been harmless.

With respect to Yacos's osteoporosis, the ALJ found that "[w]hile the condition may place [Yacos] at greater statistical risk for fracture, no source ha[d] suggested limitations in work-related activities associated with the disease." *Id.* at 22. Indeed, Dr. Schwab found that Yacos walked with a "normal" gait, could walk on her heels and toes "without difficulty," could complete a full squat and rise from a chair without difficulty, and did not need any help getting on or off the examining table. *Id.* at 470. The ALJ's determination the Yacos's osteoporosis did not impose any functional limitations was therefore supported by substantial evidence.

And the ALJ's conclusion that Yacos's anxiety did not impair her mental functioning also was supported by substantial evidence. As the ALJ noted, *see id.* at

16

24, although Yacos took anxiety medication, she testified that none of her treating physicians had ever recommended that she seek mental health treatment, and she had never sought such treatment on her own, *see id.* at 47-48. For this same reason, the ALJ did not err in rejecting the opinion of the consulting psychologist, Dr. Ippolito, that Yacos had moderate to marked limitations in appropriately dealing with stress and should see a counselor. The ALJ explained that, aside from Dr. Ippolito's opinion, "[t]here [were] few discussions in the treating record that [Yacos] was unable to manage stress," nor were there any references to "related objective deficits." *Id.* at 24. Given the apparent conflict between Dr. Ippolito's opinion and all the other evidence in the record, the ALJ's decision not to include a stress-based limitation in Yacos's RFC was not error. *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity[,] . . . the final responsibility for deciding these issues is reserved for the Commissioner."). So even if this Court might reach a different conclusion, remand would not be appropriate. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

In short, the ALJ's finding that Yacos was not disabled is supported by substantial evidence in the record—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison*, 305 U.S. at 229).

**CONCLUSION**

Although this Court has sympathy for Yacos and the hardships that must stem from the impairments she experiences, the ALJ's decision neither was contrary to the substantial evidence in the record nor did it result from any legal error. Therefore, for the reasons stated above, Yacos's motion for judgment on the pleadings, Docket Item 7, is DENIED; the Commissioner's cross motion for judgment on the pleadings, Docket Item 14, is GRANTED; the complaint is DISMISSED; and the Clerk of Court shall close the file.

SO ORDERED.

Dated: December 3, 2019
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE